UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTINA R. CURCURU, ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 03 12599 JLT |
| MASSACHUSETTS BAY ) | |
| TRANSPORTATION AUTHORITY ) | |
| and AMTRAK, ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION FOR AUTHORIZATION TO
CONDUCT ADDITIONAL DISCOVERY**

The defendants, National Railroad Passenger Corporation ("Amtrak") and the Massachusetts Bay Transportation Authority ("MBTA"), jointly move for authorization to conduct additional discovery due to new information revealed in medical records and depositions conducted to date. In particular, Defendants move to continue the deposition of the plaintiff Christina Curcuru ("Plaintiff"), to take the deposition of her primary care physician, Amy Bonner Esdale, M.D., and to have authorization to take the deposition of Plaintiff's mother if circumstances so require.

**I.     FACTS**

1. On March 8, 2005, Amtrak filed responses to Plaintiff's interrogatories and request for production of documents.

2. On August 19, 2005, Amtrak filed its Initial Disclosures.

3. On September 29, 2005, Plaintiff filed her automatic disclosures which consisted merely of a list of witnesses, and the inclusion of several documents related to the police investigation and criminal trial already in the possession of the defendants, and a one-page note from Plaintiff's former L.I.C.S.W. counselor.

4. On October 19, 2005, at the Court sponsored Scheduling Conference, the Court authorized Defendants to conduct depositions of the plaintiff and her former psychologist. At that time, Defendants had no knowledge of Plaintiff's medical history or that she was about to undergo further psychotherapy, three and one-half years after she terminated her initial treatment. No interrogatories or requests for production of documents were permitted to be served upon Plaintiff.

5. On December 7, 2005, the defendants deposed Plaintiff who testified that she had suffered emotional distress due to the incident on the train on November 27, 2001 and underwent counseling for approximately five months. Furthermore, she testified that her present psychological condition is worse than it was in 2002, entirely because of the train incident of November 2001.

6. Plaintiff testified at her deposition that her primary care physician since high school up to the present is Amy Bonne Esdale, M.D. The defendants had no way of knowing this information until Plaintiff's deposition.

7. Plaintiff testified at her deposition that she had begun treating in November 2005 with Alan Gold, a L.I.C.S.W., to whom she was referred by her legal counsel. The defendants had no way of knowing this information until Plaintiff's deposition.

8. On January 12, 2006, the defendants received signed authorizations for medical records and immediately sent them to Mr. Gold, Plaintiff's therapist, and Dr. Bonner Esdale, Plaintiff's primary care physician. Defendants did not receive Dr. Bonner Esdale's medical records until January 27, 2006, and Mr. Gold's medical records until February 1, 2006.

9. Mr. Gold's deposition was taken on February 23, 2005.

10. Plaintiff took the deposition of Eric Hardy, the man who allegedly assaulted her.

11. Plaintiff's testimony at her deposition conflicts with information contained in the medical records.

12. Plaintiff testified at her deposition that she had never been attacked by anyone. Ex. A at 77. Yet the notes of Dr. Bonner Esdale indicate that Plaintiff was raped when she was sixteen years old. Ex. B, 10/25/01 entry. Mr. Gold, her current L.I.C.S.W., was unaware that Plaintiff had ever been raped.

13. At her deposition, Plaintiff denied any significant emotional distress in her youth due to family issues. Ex. A at 9, 91-93. Yet the recollections of Ms. Jampel, her first L.I.C.S.W. and the office notes of her current L.I.C.S.W. indicate Plaintiff had a traumatic childhood due to her adoption, the violent outbursts of her adopted father, the divorce of her adopted parents when she was six, and the hatred of her by her older biological brother. Ex. C, Jampel letter; Ex. D, Gold treatment records.

14. At her deposition Plaintiff testified to the anxiety attacks she has experienced since the incident, but made no reference to her being "very anxious" and having "panic attacks" which are mentioned in the medical records of her primary care

physician from the time frame *prior to the incident*. Ex. A 76, 119. Ex. B, 8/29/00 entry.

15. Dr. Bonner Esdale's records indicate that Plaintiff told her that she had already had eight different sexual partners by the age of 19, and she wanted exams for HIV and other sexually transmitted diseases. Ex. B, 10/25/01, 4/26/01.

16. Plaintiff testified that she had undergone an abortion in June of 2005, approximately five (5) months prior to the deposition. Plaintiff, with the concurrence of her counsel, refused to explain whether the abortion was done due to medical necessity or personal choice. Ex. A, 120-122. The defendants did not know about the abortion until Plaintiff's deposition. Mr. Gold, her current L.I.C.S.W., was unaware that Plaintiff had recently had an abortion.

17. Plaintiff claims that her emotional distress progressively worsened after the alleged incident in her complaint. Ex. A, 76-77. Plaintiff's alleged emotional distress and psychological disturbance are the basis of her substantial damages claim ($800,000 demand) and have been made a significant issue by her in this civil action.

**ARGUMENT**

In accordance with the Court's wishes and in the interest of moving this case forward expeditiously, the defendants have taken very limited discovery in this matter. However, as shown above, there are numerous instances in which Plaintiff's testimony about her family and emotional history appears to be substantially at odds with her medical records and her comments to her social worker counselors. In many civil actions where discovery may be conducted differently, the defendants might have

known of these apparent contradictions prior to deposing the plaintiff. However, in this case, the defendants had no way of knowing of this contradictory information before the deposition of Plaintiff. The defendants should have an opportunity to cross examine Plaintiff on these issues to help determine the degree and validity of her claim of emotional distress and her claim that it is attributable to this incident, and not other factors, such as her traumatic upbringing, other health issues, rape, and abortion. Defendants believe that no more than three additional hours will be required of Plaintiff.

In addition, the defendants should have the opportunity to verify, and obtain amplification of, the significant statements attributed to Plaintiff in Dr. Bonner-Esdale's office notes.

In the event that Dr. Bonner Esdale is unable to authenticate these statements or remember any details of same, the defendants may need to depose Plaintiff's adoptive mother to help verify Plaintiff's emotional history.

In light of the fact that this is a case with very high exposure to the defendants, e.g. the current demand is $800,000, it would be injust and inequitable to prevent the defendants from further exploring these limited issues in two or three brief depositions within the next several weeks. Although these depositions will be necessary to enable Defendants to be properly prepared for trial, the information gleaned therein may also contribute to the parties' ability to settle this matter.

WHEREFORE, the defendants request that this Honorable Court permit the defendants to continue Plaintiff's deposition for up to three more hours, to take the deposition of Dr. Bonner Esdale, and to have authority to take the deposition of Maryann Curcuru, Plaintiff's adoptive mother.

**Respectfully submitted,**

| | |
|---|---|
| **DEFENDANT,**<br>National Railroad Passenger Corporation ("Amtrak"),<br>by its attorneys, | **DEFENDANT,**<br>Massachusetts Bay Transportation Authority,<br>By its attorney, |
| s/Stephen E. Hughes<br>John A. Kiernan, BBO #271020<br>Stephen E. Hughes, BBO #629644<br>Bonner Kiernan Trebach & Crociata, LLP<br>One Liberty Square - 6th Floor<br>Boston, MA 02109<br>(617) 426-3900 | s/Paul J. Sahovey<br>Paul J. Sahovey, BBO No. 271020<br>Massachusetts Bay Transportation Authority<br>Assistant General Counsel<br>Ten Park Plaza<br>Boston, MA 02116<br>(617) 222-3189 |

DATED: March 1, 2006

Certificate of Service

I, Stephen E. Hughes, hereby certify that I have on March 1, 2006, served a true copy of the foregoing document by sending it by first class mail, postage prepaid, to counsel of record for Plaintiff.

s/Stephen E. Hughes
Stephen E. Hughes